R. W. CAFFEY'S EXECUTORS v. MRS. LAVINIA CAFFEY.

No. 1375.

1. **Deed—Parol Evidence Varying—Different Estate.**

A deed absolute in terms cannot be varied by evidence of a contemporaneous parol agreement by the grantee that he would either devise the land to the grantor or reconvey the same to her, reserving to himself a life estate therein, thus changing the estate conveyed from a fee simple title to a life estate.

2. **Deed of Married Woman—Fraud and Duress—Certificate of Acknowledgment.**

Where a wife conveys land to a trustee for the benefit of the husband, in a separation settlement, the husband is not protected by the evidence of the officer's certificate of acknowledgment to the deed, as would be a bona fide purchaser; and in an action by the wife against the husband's executors and devisees to recover the land, she is entitled to show that the deed was procured by the fraud and duress of the husband, without alleging that the officer who took the acknowledgment acted fraudulently or illegally, or that he certified to facts not really true.

3. **Evidence—Transaction with Decedent—Suit Against Devisees.**

Where an action is brought against the executors of the husband for certain property held by them in trust for his devisees, the plaintiff's petition alleging that the legal title is in such devisees, and that the executors hold possession for the devisees, the provisions of article 2248 of the Revised Statutes, prohibiting a party to the suit from testifying as to statements by and transactions with a decedent, do not apply, unless it be further developed that the suit is prosecuted against the executors as the legal representatives of the estate.

4. **Evidence—Will—Probate Necessary.**

A paper purporting to be a will is not admissible in evidence as such without having been probated as a will.

**5.   Charge of Court—Issue not Raised by the Evidence.**

It is the duty of the court to charge only the law governing the issues involved in the case, and not the law applicable to the facts of a hypothetical state of case merely furnishing an argument.

APPEAL from Navarro.   Tried below before Hon. RUFUS HARDY.

*McKie & Autry,* for appellants.—1.   A verbal promise to reconvey or to devise real estate cannot be enforced.   Rev. Stats., art. 2464; Fulton v. Robinson, 55 Texas, 401; Johnson v. Granger, 51 Texas, 42; Glass v. Gaines, 15 S. W. Rep., 877; Wigginton v. Ewell, 9 S. W. Rep., 285; Wooldridge v. Hancock, 6 S. W. Rep., 818.

2.   A married woman may not avoid the effect of her solemn conveyances without alleging fraud on the part of the officer certifying to the formalities or else alleging that the official recitals are not true.   Hartley v. Frash, 6 Texas, 216; Shelby v. Burtis, 18 Texas, 631; Wiley v. Prince, 21 Texas, 640; Williams v. Pouns, 48 Texas, 146.

*W. W. Ballew* and *Frost, Neblett & Blanding,* for appellee.—1.   A contemporaneous parol agreement consistent with a written agreement and forming a part of the contract, although not reduced to writing, will be construed in connection with the written part of the contract.   Etter v. Dugan, 1 Posey, 175; Strauss v. Gross, 21 S. W. Rep., 305; History Co. v. Flint, 4 Will. C. C., 224; Rule 25, title 38, art. 225, Sayles' Statutes; Lanier v. Faust, 81 Texas, 186.

2.   A surviving party may testify to transactions by and conversations with a deceased party thereto in a suit with the legatees under decedent's will.   Rev. Stats., art. 2284.

LIGHTFOOT, CHIEF JUSTICE.—Appellants state the case as follows: "This suit was filed in the District Court of Navarro County by Mrs. Lavinia Caffey against Jas. L. Autry and Frank S. Kerr, independent executors of the will of R. W. Caffey, deceased, and the Grand Lodge of the Independent Order of Odd Fellows of the State of Texas.   The original petition was in form of trespass to try title to 220 acres of the J. M. Campbell survey in Navarro County.   An amended petition (upon which the trial was had) set forth the same formal allegations of trespass to try title, and alleged, in addition, that plaintiff and R. W. Caffey had been married and had acquired 454 acres of the Campbell survey, of which the tract in controversy was a part, and that upon a division of the same at the time of their separation, R. W. Caffey promised plaintiff that he would 'either devise the said land to plaintiff or reconvey the same to her, reserving to him a life estate therein.'

"Plaintiff further alleged that the tract of 454 acres was paid for by her own separate means, and hence was not community property, and had been improperly subjected to the partition, into which she was forced to enter by duress and undue influence.

"In June, 1875, plaintiff was married to R. W. Caffey, and they lived

together until October, 1884, at which time they separated, and did not live again together. At the time of the marriage, each owned some property. On February 25, 1878, the Leake place of 180 acres was purchased for $300 in cash, and $400 out of crop proceeds. On May 16, 1882, Alexander Beaton made a deed to Mrs. Lavinia Caffey for 454 acres. of the Campbell survey, of which tract the 220 acres in controversy is a part. The consideration paid was $1600, cash.

"In 1884, the parties by mutual agreement separated, and conveyed to R. L. Hodge, trustee, a large quantity of personal property along with the 454 acres above named, and other lands, and in the conveyance named three commissioners upon whom was imposed the duty of impartially dividing the property conveyed into equal portions between the two parties, and assigning one portion to each. The commissioners made the division, and the trustee thereupon executed separate deeds to each in accordance with the partition, and thus the tract in controversy was conveyed to R. W. Caffey, and he forthwith went into possession and so remained until his death.

"In February, 1894, R. W. Caffey died, leaving a will, which was in due time probated, and in accordance with its provisions, Jas. L. Autry and Frank S. Kerr were appointed independent executors. After one or two minor bequests, the testator devised the entire residue of his property to the Grand Lodge of the Independent Order of Odd Fellows of the State of Texas, for the benefit of their orphan home at Corsicana."

The third assignment of error complains of this charge: "If from the evidence you believe that prior to the final separation of R. W. Caffey and his wife, Lavinia Caffey, the plaintiff, and prior to the execution of the deed to R. L. Hodge, there was an express and explicit agreement, though verbal, to the effect that plaintiff and R. W. Caffey should jointly make the deed to R. L. Hodge, as trustee (which has been introduced in evidence), and that said Hodge should convey the 220 acres of land in controversy in this case to said R. W. Caffey, and that it was also further agreed between R. W. Caffey and plaintiff, and as a part of the consideration and inducement to Mrs. Caffey to make said deed to R. L. Hodge, that R. W. Caffey should at his death bequeath or reconvey said 220 acres to the plaintiff herein, Mrs. Caffey, then you will find for the plaintiff for the land in controversy, and you will also find for the plaintiff for the reasonable rental value of the premises for the year 1894, and for the possession of said premises. If there was no such express verbal agreement between R. W. Caffey and wife, as above explained, then you will find for the defendant, unless you find the deed to Hodge and the settlement was made by plaintiff under duress, as hereinafter explained, and as to the question of whether or not there was such verbal agreement, you are instructed that it devolves upon plaintiff to establish such verbal agreement by the preponderance of the evidence in the case."

The question is also properly raised under assignments objecting to plaintiff's pleading and testimony introduced, tending to show a parol co-temporaneous agreement on the part of R. W. Caffey to re-convey or

will the property to Mrs. Caffey at his death. The terms of the written deed from R. W. Caffey and his wife, Lavinia Caffey, which was executed in due form of law to R. L. Hodge, trustee, and the conveyance by him to R. W. Caffey, fixed in the latter a fee simple title to the land, unless such conveyance was void by reason of some unfairness in the transaction growing out of the matters alleged by appellee which would defeat it. Riley v. Wilson, 86 Texas, 240, and authorities there cited. The written covenant, if in all respects just and fair, cannot be defeated, in whole or in part, by grafting upon it a co-temporaneous verbal agreement which is in conflict with such writing, in that it attempts to change the conveyance of the 220-acre tract, the portion set apart to R. W. Caffey, from a fee simple title to a life estate. Railway v. Jones, 82 Texas, 161; Bruner Bros. v. Strong, 61 Texas, 555.

There are exceptions to the rule, viz: that a deed absolute on its face may be shown to be a mortgage, or that the consideration in a deed is not properly stated. Railway v. Jones, 82 Texas, 161; Gibson v. Fifer, 21 Texas, 261; Railway v. Pfeuffer, 56 Texas, 66. This case does not come within any of the recognized exceptions, and the court erred in the charge above set out. It also erred in its ruling in regard to the pleading in this respect, and in refusing to exclude the testimony introduced to establish such parol agreement.

2. The testimony of the witnesses Cooksey, Tarer, A. P. and A. T. Haynes, Saxon and Mrs. Haynes, as shown in the general bill of exceptions number one, as to the declarations of the decedent showing the amount of community property and the amount of separate property owned by each of the spouses, was admissible under the issues presented by appellee's pleading, which set up, in effect, that the property in controversy was her separate estate, and that she had been induced to execute the deed by the threats, duress and undue influence of the husband, and the fourth assignment of error is not well taken.

3. Under the ninth assignment of error, appellants complain that the court erred in refusing to sustain their special exception to plaintiff's petition, which set up a conveyance of the land by the husband and wife to a trustee, and attempted to avoid it, without alleging that the formalities of law necessary to the valid execution of the deed were not complied with, or that the officer who took the acknowledgment acted fraudulently or illegally, or that he certified to facts not really true. The rule which appellants invoke is proper in a case where there is a controversy between the wife and a third party over a deed executed by her to such third party who has no notice of any defects by reason of fraud, undue influence or the like. Davis v. Kennedy, 58 Texas, 516. But a different rule prevails with reference to a deed from the wife to a trustee for the benefit of her husband. In the case first cited above (86 Texas, 244), our Supreme Court says: "A husband taking under such circumstances, however, would not be protected by the officer's certificate, as would be a bona fide purchaser, and as against him, the wife or her heirs may show

that she was influenced to make the deed by such causes as would in-validate it." Riley v. Wilson, 86 Texas, 243.

This controversy is between the surviving wife and the devisee of the ·deceased husband, over a deed executed between the parties upon a sep-aration of the spouses. In regard to such conveyances, Judge Gaines, in an able and full opinion, says: "At common law, agreements between husband and wife, commonly known as separation deeds, have usually been treated as against public policy, and as capable of a partial enforce-ment only. All deeds for future separation are held to be absolutely void; but where the spouses have already separated, or have determined upon a separation, and are in the act of executing it, a conveyance by the husband, intended as a provision for the support of the wife, will be upheld. In other respects, a deed of separation was held void. This was the carefully restricted doctrine at an early day in the English courts, and as so limited it has been universally recognized in the courts of this ·country. The tendency of the later English cases is to extend to deeds ·of separation a more liberal support (1 Bishop on Marriage and Divorce, .section 634a), while by the weight of authority in the American courts they are held valid in so far as they settle the rights of property between the husband and wife, provided they have been entered into without ·coercion or other undue influence, and the provisions are just and equita-ble. Hitner's Appeal, 51 Pa. St., 110; Hutton v. Hutton, 3 Barr, 100; Dillinger's Appeal, 11 Casey, 357; McKennon v. Phillips, 6 Whart., 571; Loud v. Loud, 4 Bush, 453; McHubbin v. Patterson, 16 Md., 179; Ran-·dall v. Randall, 37 Mich., 563; Roberson v. Roberson, 25 Ia., 350; Mc-Kee v. Reynolds, 26 Ia., 578; Walker v. Walker, 9 Wall., 743; see also Fox v. Davis, 113 Mass., 255; Snitzer v. Snitzer, 26 Gratt., 574. In most of the cases cited, the only interest in property relinquished by the wife in the agreement was her dower in the husband's lands. But we think that in a jurisdiction where the spouses hold each an equal interest in the property acquired during marriage, the same principles should apply to deeds of separation which make a partition of the common prop-·erty. Unless against the policy of the law, and on that account void, there is no difficulty in giving effect to the conveyances in the present ·case. The power of the husband in this State to convey direct to the wife is well established by our decisions; and at common law the wife may convey to the husband through the intervention of a trustee, as was ·done in this case." Raines v. Wheeler, 76 Texas, 395. See also Koc-wuk v. Marak, 54 Texas, 201; Wiley v. Prince, 21 Texas, 641.

Under the rule above laid down, which is supported by the case of Riley v. Wilson, supra, we see no difficulty in upholding such a settle-ment between husband and wife, if fairly made and free from coercion and other undue influence, and the provisions are just and equitable. The 220-acre tract is the only property in controversy, and there seems to have been no effort by either party to re-open the settlement, except as to this tract, or to make a repartition of all the property.

4. Under the tenth assignment of error appellants object to the testi-

mony of plaintiff, Lavinia Caffey, as to the statements made to her by the decedent about the property owned by him at the time of the marriage, and his statement to the commissioners about the community property, by which they were governed, that the relations between them were unpleasant, and she was always in dread, that he was often drunk and abused and cursed her, and drew a hatchet and an iron shovel over her head, etc. This suit is really between appellee and the devisee of the husband, the plaintiff's petition alleging that the legal title is in such devisee, and that the executors are holding the property for such devisee. The record does not disclose that there are debts, or that any administration is necessary, and the independent executors seem to be acting really as trustees for the devisee. It has been held by the Supreme Court that the terms of Revised Statutes, article 2248, will not be extended so as to embrace devisees or legatees. Newton v. Newton, 77 Texas, 508; Ingersoll v. McWillie, 30 S. W. Rep., 58, and authorities there cited. The testimony was admissible.

Under the above rule, appellee was a competent witness to testify to facts showing what was separate and what was community property, and to any material fact or circumstance which would tend to establish her cause of action as alleged, unless it should be developed on another trial that the suit is prosecuted against the executors of R. W. Caffey as the legal representative of the estate, so as to bring the case within the terms of the statute (art. 2248), in which event it will be necessary to confine the testimony to such matters as are not included in the terms, "any transaction with, or statement by the testator."

5. The testimony of J. B. Cooksey and Thos. J. Saxon, objected to in the eleventh assignment of error, was admissible under the issues, as tending to establish the condition of affairs at the Caffey homestead prior to the settlement, which might throw light upon the transaction.

6. Under the thirteenth assignment, the court erred in admitting in evidence, over appellants' objection, the paper purporting to be the will of J. K. Cooksey. It was not admissible as a will without having been probated as such. Ochoa v. Miller, 59 Texas, 460; Moursund v. Priess, 84 Texas, 554.

7. Under the fifteenth assignment appellants complain of the refusal of the court to give the following charge: "You are instructed that, under the facts undisputed in this case, if R. W. Caffey had died without leaving a will, the plaintiff, Mrs. Lavinia Caffey, would have inherited all of his property at his death." We cannot perceive what bearing this charge would have upon the issues joined. Appellants contend that it would have enabled the jury to place a proper explanation upon the declarations of the testator, to the effect that the plaintiff would get his property when he died. If this should be true, it would only have been furnishing an argument, when it was the duty of the court to charge the jury only upon the law governing the issues involved. R. W. Caffey did not die without leaving a will, and hence no such hypothetical case would have been proper.

8. The appellants requested the following charge, which was refused: "You are further instructed that if the division of the property in which the parties were jointly interested was fair and equitable, and if R. W. Caffey did not receive any more than he was rightfully entitled to receive, then you will find for the defendants, and need not go into the question of finding the special issues as submitted in the main ·charge."

The special charge number two requested by appellants is about the ·same, and we think that both were substantially given in the main charge of the court.

9. Appellants complain of the form of the judgment against Jas. L. Autry and Frank S. Kerr, who hold practically as trustees for the Independent Order of Odd Fellows, which is the real party litigant. It is useless to pass upon this feature of the case, as the judgment must be reversed on other grounds, and it is a question which may be obviated on another trial.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered February 22, 1896.